UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,    CASE NO. 00-6029-CR-ZLOCH

    Plaintiff,

vs.

MARK NEUROHR,

    Defendant.
_____/

## MOTION FOR NEW TRIAL, INCLUDING A MOTION FOR JUDGMENT OF ACQUITTAL NOTWITHSTANDING THE VERDICT

COMES NOW the Defendant, Mark Neurohr, by and through the undersigned attorney, pursuant to Rule 23, and moves the Court for a new trial as to counts 1, 2 and 3, wherein he is charged with income tax evasion for the tax years 1993, 1994 and 1995. Pursuant to Rule 29, the Defendant also moves the Court for a motion for judgment of acquittal after discharge of the jury. As grounds therefore the Defendant states:

1.    The trial court erred in not granting the Defendant's motions for judgment of acquittal as to counts 1, 2, and 3.

2.    The trial court erred in not giving instructions on the lesser included offenses requested by the Defendant.

3.    The trial court erred in not allowing the Defendant to argue his theory of defense to the jury.

4.    The trial court erred in not granting a mistrial regarding comments made by the prosecutor during closing argument.

## LEGAL ARGUMENT

In counts 1, 2 and 3, the Defendant is charged with income tax evasion, in violation of § 26 U.S.C. 7201. The Defendant moved the Court to grant a judgment of acquittal on the grounds that he government's proof that the Defendant owed taxes was insufficient: (1) because the government failed to introduce evidence that a tax was due and owing for 1994 and 1995 (i.e. a Form 23C tax assessment was not made for the tax years 1994 and 1995); and (2) because the government's proof of a Form 23C Date was questionable as to the 1993 tax year.

In counts 1, 2 and 3, the Defendant is charged with income tax evasion, in violation of § 26 U.S.C. 7201. According to the jury instructions, the government must prove that the Defendant received taxable income, that he owed substantial income tax, and that he knowingly and willfully attempted to evade or defeat such tax. To convict the Defendant of income tax evasion, the government must prove that a substantial income tax was "assessed," that the income tax was owed, that the Defendant knew he owed a substantial income tax, and that the Defendant attempted to evade payment of the tax.

"Assessment" is a prescribed procedure for officially recording the amount of a taxpayer's administratively determined tax liability. *Rambo v. United States, 492 F.2d 1060, 1061 n.1 (6th Cir. 1974),* citing *Cohen v. Gross, 316 F.2d 521, 522 (3rd Cir. 1963).* The term "assessment" has a technical meaning spelled out in the Internal Revenue Code and that meaning is binding on the federal courts and the government as well. *C & R Investments, Inc. v. United States, 267 F. Supp. 932, 937 (D. Kan. 1967)* (citing *United States v. Miller, 318 F.2d 637, 638-39 (7th Cir. 1963)),* rev'd on other grounds, *404 F.2d 314 (10th Cir. 1968).* The meaning of the term " assessment" contemplates the recordation by the Internal Revenue Service of the liability of a taxpayer or the

determination of the amount due as tax. *Ibid*. The "assessment" is the IRS' determination that the taxpayer owes income tax to the government.

The procedure for making an income tax assessment is as follows. The IRS must first mail a notice of deficiency to the taxpayer by certified or registered mail. See *26 U.S.C. § 6212(a)*. Once this notice has been mailed, the taxpayer has ninety (90) days in which to file a petition in the Tax Court. See *26 U.S.C. § 6213(a)*. Until the ninety (90) days have passed, the IRS cannot make an assessment. See *Holof v. Commissioner, 872 F.2d 50, 53 (3d Cir. 1989)*. If the taxpayer does not file a petition in the Tax Court within the specified time, the IRS makes an assessment. *26 U.S.C. § 6213(c)*.

An assessment is made by recording the liability of the taxpayer in the office of the Treasury Secretary in accordance with the rules and regulations established by the Secretary of the Treasury. *26 U.S.C. § 6203*. The Internal Revenue Code provides the manner of making an assessment as follows:

> Method of Assessment -- the assessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary. Upon request of the taxpayer, the Secretary shall furnish the taxpayer a copy of the record of assessment. *26 U.S.C. 6203(a)*.

Detailed procedures for making an assessment are provided in *Treasury Regulation § 301.6203-1*, which states that:

> **The assessment shall be made by an assessment officer[1] signing the summary record of assessment.** The summary record, through supporting records, shall

---

[1] The District Director shall appoint one or more assessment officers. The appointment of an assessment officer is made by a delegation order and should be given to a position no lower than a Branch Chief. *Internal Revenue Regulation No. 301.6203*. The assessment shall be made by an assessment officer signing the summary record of assessment. The summary record, through supporting records, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period if applicable, and the amount of the assessment. The date of the assessment is the date the summary record is signed by an assessment officer. *Treas. Reg. § 301.6203-1 (1955)*.

provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of assessment...The date of the assessment is the date the summary record is signed by an assessment officer. (emphasis added)

**"The assessment officer signs a <u>form 23-C</u>, Assessment Certificate, and this record, through supporting material, provides identification of the taxpayer by name and number, the taxable period, the nature of the tax and the amount assessed."** *Internal Revenue Manual 5312 (1) MT5300-1 (11/15/85).* The IRS makes assessments by having a duly designated official from the district office or the regional tax center, known as an assessment officer, fill out and sign a 'summary record of assessment,' also known as a Form 23C. The Form 23C identifies the taxpayer, the type of tax owed, the taxable period, and the amount of the assessment.

Regarding the tax years 1994 and 1995, the government did <u>not</u> introduce the Form 23C. The Form 23C is the actual assessment form and is the best evidence of the assessment. Instead the government introduced a Form 4340 for the tax years 1994 and 1995. (emphasis added)

The Eleventh Circuit has already considered the introduction of a Form 4340, instead of the Form 23C, as proof of an assessment. In *United States v. Dixon, 672 F. Supp. 503 (M.D. Ala. 1987)* per curiam affirmed, *849 F.2d 1478 (11th Cir. 1988)*, the Court held that the government's failure to introduce the Form 23C was not fatal error, because it introduced a Form 4340 that reflected a "23C Date." The "23C Date" on a Form 4340 indicates the date on which the Form 23C was signed, the date of the assessment, and provides evidence that the tax was actually assessed. The Eleventh Circuit re-affirmed this holding in *United States v. Chila, 871 F.2d 1015, 1018 (11th Cir. 1989)*. Courts have held that a Form 4340 is adequate to prove a valid assessment, **<u>if</u> it lists the "23C Date," indicating the date on which the actual assessment was**

---

**made.** *Geiselman v. United States, 961 F.2d 1, 5-6 (1ˢᵗ Cir.)* cert. denied, *121 L.Ed.2d 191, 113 S.Ct. 261 (1992).* (emphasis added)

In our case, the Form 4340 for 1994 and 1995 do <u>not</u> list a "23C Date." The Form 4340 for 1994 and 1995 do not contain the date on which the Form 23C was signed, the date of the assessment, or provide any proof the tax was actually assessed. Thus, as required by law, the government has failed to prove an income tax assessment was made and the amount of the assessment. Given this failure of proof, this Court must grant a judgment of acquittal as to counts 2 and 3 of the Indictment. (emphasis added)

As to the tax year 1993, the government introduced a Form 4340 that reflected a "23C Date" of April 3, 1995. Normally, a signed Form 4340 (certificate of assessment) that reflects a "23C Date" is sufficient proof that a Form 23C (summary record of assessment for a particular date) was signed on that date; thus, it is not necessary to introduce into evidence the actual Form 23C. However, if there is a reason to doubt the accuracy of the Form 4340, then the Form 23C must be introduced into evidence. **In our case, the Form 4340 reflects that the tax deficiency was "assessed" on April 3, 1995; however, the government's custodian of records testified the tax deficiency was "assessed" on June 10, 1996.** In other words, the government's custodian of records, interpreting the transcript of account testified the tax deficiency was "assessed" 14 months after the "23C Date" on the Form 4340 (i.e. April 3, 1995 versus June 10, 1996).

In *Brafman v. United States, 384 F.2d 863 (5ᵗʰ Cir. 1967)*, the government did not introduce the Form 23C to prove the date of assessment. Instead, it introduced a certified copy of a certificate of assessment, like the government did in our case. The taxpayer questioned the date of the assessment. The Fifth Circuit in ruling in favor of the taxpayer wrote:

> It appears to us that the requirement of the applicable Treasury Regulation -- that an assessment officer sign the assessment certificate -- is consistent with the literally mechanical procedures for recording of liability. The recordation is to be accomplished through "machine operations", but the actual and final assessment step, that step which establishes a prima facie case of taxpayer liability, can be taken only with the approval of a responsible officer of the Internal Revenue Service. The Government may want to postpone assessment in certain cases because of the limitations on collection and lien perfection that begin to run at the time of assessment. **This might be accomplished, after the computers have run their course, only by the assessment officer refusing to sign the already prepared certificate. What is important in any case is that assessment is not automatic upon recordation; it requires the action of an assessment officer. That action, as defined explicitly in the Treasury Regulations, is the signing of the certificate.** (emphasis added)

The Fifth Circuit recognized that there might be a computer recorded assessment date, but that the assessment might not be effective, because the Form 23C it was not signed by the assessment officer. The Court reasoned that the government might intentionally refuse to sign the Form 23C to extend the statute of limitations – "The Government may want to postpone assessment in certain cases because of the limitations on collection and lien perfection that begin to run at the time of assessment."

While the Form 4340 reflects as "23C Date", it does not reflect that the Defendant was "notified" within 60 days of the "23C Date." The Form 4340 reflects that the Defendant was sent notification on June 10, 1996, over 400 days after the "23C Date." Given that the government's custodian of records testified that the tax deficiency was "assessed" on June 10, 1996 and that the Defendant was sent a notice of June 10, 1996, there is reason to believe that June 10th was the "23C Date." June 10th would seem to be the logical date, because the IRS would not wait over 400 days to send out the notice. The government's witness testified once an "assessment" is made the computer system generates "notices" on a regular recurring basis. In this case, the transcript of account says the first notice, without specifying what it said, was sent out over 400 days after the Form "23C Date." Given that notices are sent out on a regular, timed

6

basis after an "assessment" is made, this raises a doubt about the fidelity of the "23C Date." In order for the government to prove beyond a reasonable doubt the true "23C Date," it needed to introduce the actual Form 23C.

The law requires that the taxpayer be given "notice" within 60 days of the 23C Date." In our case, the notice was sent out over 400 days after the "23C Date." If the government argues that the Form 4340 is accurate regarding the "23C Date," then the Defendant did not get proper, timely notice of the assessment.

Introduction of the actual Form 23C was necessary for two reasons. First, it would establish if and when it was actually signed by the assessment officer. The actual signing date (effective date of the assessment) would reveal when the 60-day period for notification began to run; it would establish whether the Defendant was properly notified within 60 days as required by law. As the evidence presently stands, the Defendant received notification over 400 days after the "23C Date," instead of within 60 days as required by law. Given the irregularities in the Form 4340 and the transcript of account, the failure to introduce the Form 23C was fatal error.

If this had been a civil law suit by the government to collect the unpaid taxes, the Court would have been obligated to grant a directed verdict. The same evidentiary and due process protections should apply in a criminal case.

The cases relied upon by the government appear to argue that proof of the assessment procedure (administratively determined tax deficiency), necessary in a civil tax case, is not necessary in a criminal case. These cases appear to be premised on the argument that a tax deficiency is established when no income tax return is filed. While not filing an income tax return may establish a tax deficiency, it does not establish a "substantial income tax is owed" as

7

alleged in the jury instructions. The assessment procedure would establish that a substantial income tax was owed.

Regarding the tax years 1994 and 1995, the dilemma over the "23C Date" could have been resolved by the Court granting a judgment of acquittal as to the crimes charged (tax evasion), and submitting the case to the jury on the lesser included offenses of failure to file an income tax return. Depending on the circumstances of the case, the misdemeanor offense of failure to file an income tax return, contrary to 26 U.S.C. § 7203, is a lesser included offense of tax evasion. *United States v. Newman, 468 F.2d 791, 796 (5th Cir. 1972)*, cert. denied, *411 U.S. 905 (1973)*. A taxpayer can be convicted of the misdemeanor of willfully failing to file an income tax return <u>without</u> proof that <u>any tax was assessed or owing</u>. See *26 U.S.C. § 7303; United States v. Richards, 723 F.2d 646 (8th Cir. 1983)*.

Regarding the request for a jury instruction on lesser included offenses, each count of the indictment alleges the Defendant committed the offense by filing a false income tax return. Filing a false income tax return, contrary to 26 U.S.C. § 7206, is a lesser included offense of tax evasion by means of filing a false income tax return. *United States v. Lodwick, 410 F.2d 1202, 1206 (8th Cir.)*, cert. denied, *396 U.S. 841 (1969)*.

Each count of the indictment alleges the Defendant committed the offense of tax evasion by otherwise concealing and attempting to conceal from all proper officers of the United States his true and correct income and tax due thereon. The government introduced evidence: (1) that the Defendant did not file an income tax return for the tax years charged in the Indictment; (2) that the Defendant did not file for an extension of time in which to file the income tax returns; and (3) that the Defendant did not file an income tax return for the years charged until long after all the income tax returns were due. In his opening statement, in two separate portions of his

8

argument the prosecutor told the jury that the Defendant knowingly and willfully did not file an income tax return for 1993, 1994 and 1995. In other words, the Defendant attempted to conceal his true and correct income by not filing an income tax return. The misdemeanor offense of failure to file an income tax return, contrary to 26 U.S.C. § 7203, is a lesser included offense of tax evasion where the failure to file is included as proof of tax evasion. *United States v. Newman, 468 F.2d 791, 796 (5th Cir. 1972)*, cert. denied, *411 U.S. 905 (1973)*.

Lastly in closing argument, the prosecutor impermissibly commented on the fact that the Defendant after being indicted still did not paid his taxes for the years 1993, 1994 and 1995. In arguing against a sympathy verdict, the prosecutor impermissibly planted the seed in the jury's mind that the Defendant might receive probation. In other words, you can live with your verdict because the Defendant may receive a slap on the wrist (probation). When the comment was made, the prosecutor knew, at a minimum, that the prospective guideline range was at least level 11, which calls for some form of incarceration.

## CONCLUSION

For the reasons expressed herein and at trial, the Court should have granted a judgment of acquittal. Failing to grant a judgment of acquittal, the Court should have granted a mistrial. Failing to grant a judgment of acquittal or a mistrial, the Court should have instructed the jury on the requested lesser included offenses.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was mailed and/or faxed and/or hand delivered on ___August 15___ 2000, to:

Matthew Menchel
Assistant United States Attorney
500 E. Broward Blvd. 7th floor
Fort Lauderdale, FL 33301

9

H. DOHN WILLIAMS JR. P.A.
721 N.E. 3rd Avenue
Fort Lauderdale, FL 33304
954-523-5432; 527-5565 (fax)

By: _____
H. Dohn Williams Jr.
Fla. Bar # 0166087

C:\clients\neurohr\newtrial